48 So.2d 197

### GRISSOM et al. v. STATE for Use of ALABAMA COLLEGE.

6 Div. 927

Supreme Court of Alabama.

Oct. 12, 1950.

T. K. Selman and Thos. L. Beaird, of Jasper, for appellants.

220

Elliott & Petree, of Jasper, for appellee.

FOSTER, Justice.

This is a suit in equity to quiet the title to forty acres of land in SE¼ of NE¼ of section 8, Township 14 N, Range 9 W, of Walker County. The State claims it for the use of Alabama College, which is a State college for girls, under a land grant by Act of Congress approved February 18, 1899, 30 Stat. 837, and selection made and issued as thereby authorized dated June 30, 1900. Appellants claim the land by adverse possession occurring both before and after that date and that the title passed out of the Government by patent to one Ann Thompson dated March 1, 1858, filed for record in the Probate Office of Walker County on October 8, 1890. They do not claim under Ann Thompson, but that their possession ripened into title since the title thus passed out of the Government. The patent to Ann Thompson, as recorded in the deed records of Walker County, Alabama (thirty-one years after it was issued), described the forty acres as in Range 9 West. But a certified photostatic copy of the patent obtained from the Government Land Office shows that the patent as issued to Ann Thompson was in Range 7 West, and did not include the forty here in question. The certificate as to the grant by the United States to the State of Alabama in 1900 recites that "the records of this office show said tracts to be free from any claim adverse to that of the State," but was "subject to any valid interfering rights which may have existed at the date of selection."

■ The evidence shows entries in the plat book (as to section 8, Township 14, Range 9) which is probably the book required by section 67, Title 51, Code. For

the years 1887, 1888 and 1889 no entry as to SE¼ of NE¼, section 8, Township 14, Range 9 is shown. From 1890 to 1897, marked as "U.S.", and for 1890 also J. N. Boshell. From 1898 to 1913 to "U.S." and Alabama Girls Industrial School. From 1914 to 1920 to Montevallo School. From 1920 through 1948, it was agreed the land was assessed each year to Alabama College or Alabama Girls Industrial School. In 1947 and 1948 Mrs. Alabama Grissom, one of the appellants, also assessed this forty. But up to 1947 no one other than Alabama College or Alabama Girls Industrial School assessed it. The record (page 10) shows evidence of an entry in the tract book for Walker County of a grant by "U.S.A. to Montevallo School" of the forty in Range 9 by correct description, dated June 30, 1900. This entry on the tract book referring to the patent is treated, in the absence of evidence to the contrary, as the patent itself. Perryman v. Wright, 189 Ala. 351, 352, 66 So. 648; Aiken v. McMillan, 213 Ala. 494, 506 (22), 106 So. 150; section 387, Title 7, Code.

There is no evidence of another entry in the tract book as to a land grant by the United States of this forty in Range 9. We presume therefore that it does not show a grant of this forty to Ann Thompson. The evidence does not set out the entries in the tract book as to the SE¼ of NE¼ of section 8, Township 14, *Range 7*. It would be enlightening to know what is the entry as to it. The entry in an abstract of title to the land was by agreement taken as a complete copy of the record of the patent to Ann Thompson dated 1858, recorded October 8, 1890.

█ The record of the patent which appellants introduced in evidence is in the exact terms of the photostatic copy which appellee introduced, certified by the chief of the patents section of the United States General Land Office, except that one shows the forty to be in Range 7 and the other Range 9. The copy in the probate office gives the number of the certificate to be 27,745. The certificate number shown by the photostatic copy certified from the land office is 207,745. No one has suggested that this difference in the number shows

that they refer to different patents. But since all the other terms in them are identical except the range number and since the tract book does not show the grant to Ann Thompson in 1858 of the forty in Range 9, we think the judge was authorized to accept the view that they both refer to the same grant and that the record in the probate office was erroneous as to the range number. Such record cannot take precedence over a presently made photostatic copy of the original patent certified by the head of the department. Of course the original patent would settle the question. But it is quite apparent that the records of the Land Office at Washington show that the only grant from the United States of the forty as situated in Range 9 was under the selection for Alabama College pursuant to the Act of Congress, supra.

█ The legal effect of that status is obviously one of law and not of fact as to which Barnett, as tax collector and an alleged expert, was properly denied the right to express an opinion. This is one of the assignments of error insisted upon.

█ The case was tried on evidence taken ore tenus before the trial judge. He found that the right of the State was superior, not curtailed by adverse possession. Appellants did not claim title by inheritance or color of title or claim of purchase under Ann Thompson, but claim by adverse possession in their ancestors, with no color of title or claim of purchase or inheritance shown, occurring primarily before the patent to the State in 1900 and also to some extent after the date of that patent. Their claim of adverse possession before the patent can be of no avail because the title was in the Government. If there was a mistake in describing the land in the patent to Ann Thompson it cannot serve to operate upon the title in question in such a collateral way nor after so long a period of time and after the rights of others have accrued. The mistake in recording the patent in the probate office so as to make it appear to cover the land in question does not help appellants in this controversy. The original patent so recorded was not produced.

Moreover, there was a conflict in tendencies of the evidence as to whether appellants' ancestors exercised any acts of possession of this land as thus claimed. They owned adjoining land, of which they had possession. Whether such possession embraced any part of this forty is very uncertain. If so, not having color of title, it could be effective only as to that part so possessed. If the trial court found that such possession did not cover any part of this forty, it would be well supported by the evidence. This land is shown to be covered with the original growth of timber. Moreover, the occasional acts of cutting timber on land by a trespasser or one having no color or claim of legal right is not alone sufficient evidence of adverse possession effective to create title. Green v. Marlin, 219 Ala. 27, 121 So. 19. There was probably an effort on three occasions in 1905, 1915 and 1925 by appellants, apparently by mistake as to the lines, to cut some timber on the land after the patent to the State in 1900. They were all stopped by some State agency supervising the land.

Prior to the Code of 1907, which became effective May 1, 1908, the State was subject to the statute of limitations of twenty years for the recovery of school land and if an adverse claimant had such possession for twenty years prior to the effective date of the Code of 1907, section 4830, and prior to a suit against him by the State, and after title was divested out of the United States (on June 30, 1900), the State could not thereafter sue and recover, though since the Code of 1907 there has been no statute of limitations applicable to the State for the recovery of land held such as this under what is now section 960, Title 7, Code, and which was section 3859 of the Code of 1907. See, section 16, Title 7, Code.

So that whatever possession which appellants or their associates may have had after the grant to the State in 1900 did not and could not continue for twenty years prior to the Code of 1907. Since that time their possession, even if it were otherwise adverse to the State, could not affect the right of the State to maintain this suit. State v. Inman, 239 Ala. 348, 195 So. 448.

Appellants have no other claim of title but by adverse possession which is not sufficiently proven in point of fact, or effective in law, to show title superior to the claim of the State under its patent or to show constructive possession which would defeat this suit under the statute. The title being in the State and no one in the actual possession of the land when the suit was brought, and no one scrambling to retain or secure possession, there is sufficient constructive possession in complainant to support the suit under section 1109, Title 7, Code. Montgomery v. Spears, 218 Ala. 160, 117 So. 735; Brunson v. Bailey, 245 Ala. 102, 16 So.2d 9; Walthall v. Yohn, 252 Ala. 262, 40 So.2d 705.

We have not undertaken to consider the requirements of section 828, Title 7, Code, and its predecessors as to adverse possession, but have not overlooked it. It is unnecessary to treat the subject further.

Affirmed.

BROWN, LAWSON, and STAKELY, JJ., concur.